UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALBERT RIZZI,                                             CIVIL ACTION NUMBER

            Plaintiff,                                  18-cv-2043

vs.                                                       COMPLAINT

MORGAN STANLEY SMITH BARNEY LLC.,                         **JURY TRIAL DEMANDED**
            Defendant.                                  **AS TO DAMAGES**
----------------------------------------------------------X

      **COMES NOW,** Plaintiff Albert Rizzi, by and through his undersigned counsel, **THE LAMBROU LAW FIRM PC**, hereby files this Complaint and sues Defendant MORGAN STANLEY SMITH BARNEY LLC. (hereinafter "MORGAN STANLEY") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, New York State Human Rights Law and state law negligence and intentional claims and alleges as follows:

## INTRODUCTORY STATEMENT

      1. Plaintiff Albert Rizzi, brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant MORGAN STANLEY throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land for over twenty-six years as well as violations of the New York State Human Rights Law (hereinafter "NYSHRL"), comprised of New York State Executive Law §292 et. seq. and New York State Civil Rights Law §40 et. seq.

2. In a world of increasing number of low vision and blind individuals that is expected to double by 2050, it is essential that low vision and blind individuals are not excluded from society and segregated in area of web commerce.

3. This case arises out the fact that Defendant MORGAN STANLEY has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and visiting their place of public accommodation or service establishment, namely the Defendant' many websites fail to allow the visually impaired to have the same access as those without visual impairment.

4. Defendant MORGAN STANLEY offers wealth management services online and in person and is in the business of providing wealth management services to the general public including those individuals that have been deemed disabled by Social Security Disability.

5. The Defendant offers various websites which are directly connected to the various wealth management services they offer and such websites should offer accessibility to clients with all types of disabilities including people with visual impairments.

6. That the websites of the defendant MORGAN STANLEY are a place of public accommodation and their various websites are service establishments, within the meaning of the applicable law.

7. This is an action to put an end to civil rights violations committed by Defendant MORGAN STANLEY, against individuals with disabilities who are visually impaired and who cannot access and comprehend the internet and the websites that operate therein without the aid of assistive technology.

## JURISDICTION AND VENUE

8. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §1331, and 28 C.F.R. § 36.201. There is supplemental jurisdiction for the violations of the NYSHRL as well as the negligence claims pursuant to 28 U.S.C. § 1367.

9. This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services including wealth management services.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the plaintiff resides in this District, the Defendant transacts business in this District, and the acts constituting the violation of the ADA occurred in this District.

11. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

### ALBERT RIZZI

12. Plaintiff Albert Rizzi is a resident of the state of New York and resides within the Eastern judicial district, is sui juris, is disabled as defined by the ADA and the Rehabilitation Act.

13. Plaintiff Albert Rizzi suffers from what constitutes a "qualified disability" under the ADA. Plaintiff Albert Rizzi is legally blind with a vision disability (optic nerve damage) and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance. The Plaintiff's disability is defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h).

### MORGAN STANLEY

14. Defendant MORGAN STANLEY is a wealth mangement services company that offers wealth management services to individuals across the United States and has offices throughout the United States.

15. At all times material hereto, the Defendant MORGAN STANLEY operated numerous websites for the benefit and accommodation of individuals in order to allow them to consult and control their financial accounts.

16. Defendant MORGAN STANLEY is authorized to conduct, and is conducting, business within the State of New York and within the jurisdiction of this court.

## FACTS

17. The Defendant's various websites, offered to provide its clients, a portion of which are disabled visually and otherwise, information on various aspects of their wealth management services and also allows for the making of online financial transactions.

18. The various MORGAN STANLEY websites also allow the general public access to manage their financial accounts. As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7) and must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public. As such, the Defendant has subjected itself and the websites it has created and maintains, to the Americans with Disabilities Act ("ADA").[1]

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities."( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities - Presented on February 7,2012.

19. Plaintiff Albert Rizzi is a customer, member and account holder of MORGAN STANLEY and is interested in making use of the online platforms to manage his wealth and carry out financial transactions, as offered through the Defendant's various websites.

20. Plaintiff Albert Rizzi frequently utilizes the internet. In order to comprehend information available on the internet and access/comprehend websites plaintiff Albert Rizzi uses commercially available screen reader software to interface with the various websites.

21. In order to comprehend the Defendant's website and to become informed of the Defendant's services, the plaintiff Albert Rizzi must use screen reader software.

22. Online banking and wealth management are a highly sought after accommodation that helps improve the lives of vision impaired people such as the Plaintiff (and thousands of others like him), and helps them integrate and participate in society.

23. During the year 2011 through the present, the Plaintiff attempted on several occasions to utilize the Defendant's website to manage and control his accounts and make financial transactions. The Plaintiff utilizes different screen Reader software (hereinafter referenced as "screen reader software"), which is a popular way that is utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

24. However, the Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

25. Plaintiff Albert Rizzi attempted to locate any Accessibility Notice or any information relating to the website's future accessibility plans or information regarding contacting the

Defendant to alert the Defendant to the inaccessibility of its websites. But was unable to do so, because no such link or notice was provided[2].

26. The fact that Plaintiff Albert Rizzi could not access the Defendant's websites, he felt as if another door had been slammed in his face, as he is/was unable to participate in the experience online as experienced by the general public, 28 years after the Title III of the ADA was enacted and which promised to remove such barriers.

27. Plaintiff Albert Rizzi continues to desire to patronize the Defendant's websites, but is unable to do so as he is unable to comprehend the Defendant's website, thus he will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

28. The Defendant's websites do not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

29. The Defendant's website is/was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

30. The Defendant's website is/was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

---

[2] Other online sites have taken steps to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=lufe
http://www.potbelly.com/Company/Accessibility.aspx

31. On information and belief, the Defendant has not initiated a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

32. On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

33. On information and belief, the Defendant has not designated an employee as a Web Access0ibility Coordinator to insure full and equal use of its website by individuals with disabilities.

34. On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

35. On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

36. On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

37. On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

38. On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

39. On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, applications, and Digital Assets accessible to the visually impaired community.

40. On information and belief, the Defendant's websites do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[3].

41. On information and belief, the Defendant does not have Web Accessibility Policy.

42. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its various websites.

43. Under the ADA, all places of public accommodation must ensure that disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures

44. Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

45. For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society.

46. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website.

47. On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of its products and services and pay their accounts online.

---

[3] developed by the Web Accessibility Initiative( WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

48. On information and belief, the Defendant is aware of need to provide full access to all visitors of their websites.[4]

49. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

50. Such barriers result in punishment and isolation of blind and low vision from the rest of society.

51. The Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

52. According to the National Federation for the Blind[5], there are 6,670,300 Americans with visual disabilities.

53. The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as Plaintiff Albert Rizzi. The Defendant is operating in violation of Plaintiff Albert Rizzi's rights as protected by the ADA and plaintiff is entitled to injunctive relief. 42 U.S.C. §12188.

54. Plaintiff Albert Rizzi has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

55. Plaintiff Albert Rizzi and others will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

---

[4] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g (www.internetretailer.com/2016/04/01/webaccessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importanceada-compliance)
[5] Statistics for 2012, see http://www.NFB.org/blindness-statistics

56. Notice to the Defendant is not required as a result of the Defendant's failure to cure the violations. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

57. The Plaintiff has retained the LAMBROU LAW FIRM PC, and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

58. Plaintiff Albert Rizzi re-alleges and incorporates by reference the allegations set forth in ¶s 1-58 above.

59. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[6].

60. As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to the general public on its various websites, in derogation of 42 U.S.C. §12101 et. seq. and as prohibited by 42 U.S.C. S12182 et. seq.

---

[6] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities - Presented on February 7, 2012.

61. Pursuant to the ADA, the websites of the defendant are a place of public accommodation and/or a service establishment, under the ADA in that it provides customers a portal by which to make financial transactions online.

62. As such, the Defendant's websites must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA. Plaintiff Albert Rizzi has suffered an injury in fact because of the website's (and Defendant's) noncompliance with the ADA.

63. Types of website programming errors include (but are not limited to) Programming Error Types ("PETs"), which are easily identifiable and correctable, and Programing Alert Error Types ("PATs"), which are prone to making the website inaccessible.

64. A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired. The Defendant's website contains several types of PETs (easily identifiable and correctable), which occur throughout the website such as:

    1) The language of the document is not identified,
    2) Image alternative text is not present, and
    3) A form control does not have a corresponding label.

65. Further, the Defendant's website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

    1) Alternative text is likely insufficient or contains extraneous information,
    2) An event handler is present that may not be accessible,
    3) A heading level is skipped,
    4) Flash content is present,
    5) Adjacent links go to the same URL,
    6) A link contains no text, and
    7) Alternative text is likely insufficient or contains extraneous information.

66. More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

67. Further, the Defendant's website did/does not offer include the universal symbol for the disabled, which would permit disabled individuals to access the website's accessibility information and accessibility facts.

68. Therefore, due to the Plaintiffs disability and the Defendant's failure to have its website adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the Defendant's websites.

69. The Defendant has violated the ADA (and continues to violate the ADA) by denying access to its websites, to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations are ongoing.

70. As a result of the Defendant's inadequate development and administration of their websites, the plaintiff Albert Rizzi is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

71. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Albert Rizzi injunctive relief; including an order to: a) Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from their websites to a statement as to MORGAN STANLEY's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and b) Require Defendant to cease and desist discriminatory practices and if necessary to cease and desist operations of the various websites until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

72. Plaintiff Albert Rizzi has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff Albert Rizzi is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant.

## COUNT II- VIOLATIONS OF THE NYSHRL

73. Plaintiff Albert Rizzi re-alleges and incorporates by reference the allegations set forth in ¶s 1-73 above.

74. That the defendant's violations of the ADA as described above also constitute violations by the defendant of The New York State Human Rights Law, which is compromised of New York Executive Law § 292 et. seq. and the New York Civil Rights Law § 40 et seq.

75. That New York State Civil Rights Law § 40 et seq., allows for damages and penalties for violations of that law.

76. That as a result of the violations of the defendant of NYSHRL, the plaintiff was caused injuries and suffering, including emotional distress and injury as described above, the plaintiff was damaged in the amount of $1,000,000.00 and seeks damages for the same for actual damages, compensatory damages and pain and suffering and emotional distress.

## COUNT III - NEGLIGENCE

77. Plaintiff Albert Rizzi re-alleges and incorporates by reference the allegations set forth in ¶s 1-77 above.

78. That the defendant had a duty to create and institute on a website for individuals with disabilities as well as a link and information hotline and had to create an information portal explaining when and how the Defendant will have its website, applications, and Digital Assets accessible to the visually impaired community.

79. That the defendant had a duty in accordance with the custom and practices of the industry to have their website meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility, in order for the visually impaired to be able to use their website effectively and as easily as a person without a disability.

80. That the defendant, through their negligence, carelessness, recklessness and blatant disregard for their duty, allowed their website to remain inaccessible to the visually impaired despite complaints about the inaccessibility of their website.

81. That as a result of the actions and/or inactions of the defendant there was injury caused to the plaintiff including economic damages, emotional distress, pain and suffering and loss of enjoyment of life.

82. That as a result of the negligence, carelessness, recklessness and blatant disregard of the defendant, the plaintiff was damaged in the amount of $1,000,000.00.

## COUNT IV – INTENTIONAL CONDUCT OF THE DEFENDANT

83. Plaintiff Albert Rizzi re-alleges and incorporates by reference the allegations set forth in ¶s 1-83 above.

84. That the defendant had a duty to create and institute a website for individuals with disabilities as well as a link and information hotline and had to create an information portal explaining when and how the Defendant will have its website, applications, and Digital Assets accessible to the visually impaired community.

85. That the defendant had a duty in accordance with the custom and practices of the industry to have their website meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility, in order for the visually impaired to be able to use their website effectively and as easily as a person without a disability.

86. That the defendant, intentionally and willfully disregarded their duty to the plaintiff and those similarly situated and allowed their website to remain inaccessible to the visually impaired despite numerous and continuous complaints about the inaccessibility of their website.

87. That as a result of the willfulness of the defendant the plaintiff is entitled to punitive damages.

88. That as a result of the intentional conduct and willful disregard the plaintiff seeks punitive damages in the amount of $8,000,000.00.

**WHEREFORE**, Plaintiff Albert Rizzi hereby demands judgment against Defendant and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant from operating its websites without adequate accommodation for the visually impaired community;

c) The Court enter an Order requiring Defendant to update websites to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;

d) The Court enter an Order requiring Defendant to clearly display the universal disabled logo within its various websites, wherein the logo would lead to a page which would state defendant accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the defendant's websites.

e) The Court enter an Order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures for their websites.

g) The Court enter an Order directing Defendant to establish a policy of web accessibility and accessibility features for their various websites.

h) The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff; and

i) That the Court award $1,000,000.00 plus interest and attorneys fees;

j) That the Court award $8,000,000.00 in punitive damages for the intentional and willful conduct of the defendant and such other and further relief as it deems necessary, just and proper.

Dated this 23rd day of March, 2018.

Respectfully submitted,

Lambros Y. Lambrou, Esq.(LL6462)
THE LAMBROU LAW FIRM PC
45 Broadway, Suite 3120
New York, New York 10006
(212) 285-2100
LL@LLLAWPC.COM